IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2003 Session

## RANDY CARROLL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lewis County**
**No. 6227     Timothy L. Easter, Judge**

---

**No. M2002-00797-CCA-R3-PC - Filed July 11, 2003**

---

The petitioner appeals the denial of his petition for post-conviction relief from his convictions for six counts of sexual battery and one count of aggravated sexual battery, arguing that the post-conviction court erred in finding he received the effective assistance of counsel and in failing to address as plain error the trial court's erroneous jury instructions on aggravated sexual battery. Following our review, we affirm the post-conviction court's denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Travis Hawkins, Nashville, Tennessee, for the appellant, Randy Carroll.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In 1998, the petitioner, Randy Carroll, was charged with two counts of aggravated rape and seven counts of rape based on various sexual acts he committed with his stepdaughter, C.B.[1]  See State v. Randy Carroll, No. M1998-00075-CCA-R3-CD, 2000 WL 62109, at *2 (Tenn. Crim. App. Jan. 26, 2000), perm. to appeal denied (Tenn. Oct. 2, 2000).  On June 12, 1998, a Lewis County Circuit Court jury found him guilty of the lesser offenses of one count of aggravated sexual battery, a Class B felony, and eight counts of sexual battery, Class E felonies. Id. at *1. The trial court

---

[1] It is the policy of this court to refer to minor victims of sexual abuse by their initials only.

sentenced him as a Range I, standard offender to concurrent two-year terms for each sexual battery conviction and to a consecutive twelve-year term for the aggravated sexual battery conviction, for an effective sentence of fourteen years in the Department of Correction. Id. On direct appeal, this court affirmed the aggravated sexual battery conviction, six of the eight convictions for sexual battery, and the sentences imposed for the offenses. Id. at *7. We reversed and remanded for a new trial two of the eight sexual battery convictions based on the State's failure to elect the offenses with respect to those counts. Id. at *4. Subsequently, the State entered a *nolle prosequi* as to those two counts.

On February 13, 2001, the petitioner filed a *pro se* petition for post-conviction relief. Post-conviction counsel was appointed, and on March 30, 2001, an amended petition for post-conviction relief was filed, alleging that the petitioner's trial counsel provided ineffective assistance at trial and on appeal by, *inter alia*, failing to adequately investigate the case, failing to subpoena essential witnesses, failing to file a motion for severance of offenses, failing to conduct effective cross-examination, and failing to object to the trial court's erroneous jury instructions as to aggravated sexual battery and to raise the issue on direct appeal. Thereafter, original post-conviction counsel was allowed to withdraw, and, on November 8, 2001, replacement counsel filed a second amended petition which incorporated the allegations of the first amended petition and additionally alleged that counsel was ineffective for failing to introduce at trial the medical record of the victim's physical examination.

Our direct appeal opinion details the evidence at the petitioner's trial:

> Over the course of approximately a year and a half, defendant engaged in various sexual acts with his fifteen-year-old stepdaughter, C.B. At trial, C.B. testified to nine specific instances of defendant's conduct which formed the basis for the jury's convictions on each of the indictment's nine counts.
>
> Count 1: On May 22, 1996, the day of a neighbor's funeral, defendant entered the room where C.B. was napping with her baby brother. He lay down next to C.B. on the bed, rubbed her leg, and told her to shut up when she began to cry. He then held C.B.'s arms, ripped her shorts and penetrated her vaginally until he ejaculated.
>
> Count 2: On December 20, 1996, the day before her sixteenth birthday, C.B. went to the store with defendant. On the way home, defendant stopped by a poolroom and left C.B. in the car. When he returned, defendant drove to a dirt road blocked by a chain which he ordered C.B. to lift up as he drove under it. He then drove to a secluded spot, had C.B. lay her seat back and penetrated her vaginally until he ejaculated. On this occasion, defendant cleaned himself with a rag from the trunk of the car before driving home.

Count 3: On June 6, 1997, the day before C.B.'s younger brother's birthday, defendant borrowed a neighbor's motorcycle and gave the children rides on it. C.B. agreed to ride when defendant threatened to refuse all the other children rides if she did not go. Defendant took C.B. on a different route than the other children and parked behind a small building. There he ordered her to bend over the motorcycle and penetrated her vaginally until he ejaculated.

Count 4: On August 16, 1997, while C.B. washed dishes in the kitchen, defendant ordered the other children to do work outside. He then approached C.B. and began rubbing her leg and buttocks. Defendant followed C.B. to the bathroom where she tried to lock him out. He threw her against the wall, pulled her shorts and underwear to the side and penetrated her vaginally. When C.B. cried, he called her a "b____" and told her to shut up.

Count 5: On September 27, 1997, two days before C.B.'s mother moved them out of the house they shared with defendant, defendant sent two of C.B.'s siblings to the neighborhood market/deli for food and told the baby to find a toy. He carried C.B. into the bedroom and forced her to perform oral sex. After he ejaculated in her mouth, defendant put C.B. on the bed and penetrated her vaginally. When he finished, defendant said "I love this sh–" and laughed.

Count 6: The incident which formed the basis for the aggravated sexual battery conviction occurred while C.B. again napped with her baby brother. Defendant crawled into bed with the children and told C.B. not to wake the baby. He removed C.B.'s shorts and attempted to lubricate her anal opening with his saliva. He then placed a sandwich bag over his penis, lubricated it with his saliva, and penetrated C.B. anally. Afterward, C.B. experienced rectal bleeding for two days.

Count 7: The incident in this count occurred while C.B. washed clothes in the basement. Defendant came in, ordered C.B. to bend over with her head between her knees. He ignored her crying and requests to stop and vaginally penetrated her until he ejaculated.

Count 8: C.B. testified that defendant forced her to perform oral sex a number of times but stated, "I can't tell you the dates and can't tell you how many times that he would . . . put bruises on the back of my neck."

Count 9: On one occasion the defendant forced C.B. to perform oral sex by holding her by the back of the neck and moving her head up and down. C.B. tried to resist and ended up biting defendant. Defendant stopped momentarily, slapped her, called her a "b_____," and forced her to the point of choking until he ejaculated in her mouth.

When asked why she did not report any of these abuses, C.B. testified that defendant threatened to beat her if she told. He further threatened that if anyone discovered the abuse, he and C.B.'s mother would go to jail and the children would have nowhere to live and end up in foster homes.

Defendant testified at trial and denied all allegations.

Id. at **1-2.

Three different attorneys from the Twenty-First Judicial District Public Defender's Office were involved to various degrees at different stages in the petitioner's representation in this case, and each testified at the February 21, 2002, evidentiary hearing. The petitioner's main trial counsel, the district public defender for the office, testified his representation began several weeks before trial when he took over the case from an assistant district public defender who had been named as clerk and master in Franklin. Trial counsel testified he was admitted to the bar in 1961 and spent a number of years in private practice before being appointed by the governor in 1989 as district public defender for the Twenty-First Judicial District Public Defender's Office, covering Williamson, Perry, Hickman, and Lewis Counties. He was subsequently elected to an eight-year term in 1990, and reelected to another eight-year term in 1998. Although he was not directly involved in the case at the time of the petitioner's preliminary hearing, he believed he listened to the tape recording of the hearing and prepared and reviewed a transcript of it. He could not, however, recall whether there had been any inconsistencies between the victim's testimony at the preliminary hearing and her testimony at trial.

Trial counsel testified he had no independent recollection of the medical report prepared on the victim, but it was his common practice to review medical reports in such cases and he could not recall any sexual abuse case in which he had not done so.[2] He said his investigator, Ellery Ferrara, would have interviewed the nurse who performed the physical examination, and that Ferrara would have then reported his findings to trial counsel. Trial counsel did not know if his office had subpoenaed any of the medical personnel associated with the victim's examination, but said that the

_____

[2]Trial counsel explained at a later point in his testimony that he had not received a copy of the second amended petition from post-conviction counsel and therefore had not had an opportunity to review the relevant portions of his file in preparation for the evidentiary hearing.

information would have been in his file. Trial counsel agreed that, according to the medical report, the victim had reported that no ejaculation occurred and that the petitioner had not used a condom, whereas her trial testimony had been that the petitioner had ejaculated and that "a sandwich bag or a freezer bag was used."

Trial counsel acknowledged he did not object to the aggravated sexual battery instruction the trial court gave to the jury, and he did not raise the issue on direct appeal. Referring to the nine-count presentment in the case, he testified that in count six, the aggravated rape charge that resulted in the conviction for aggravated sexual battery, the State had alleged sexual penetration with bodily injury. He said he did not move to sever the counts of the presentment because he believed trying the offenses together created a "fog" regarding the various dates and times the different offenses allegedly occurred, which helped, rather than hurt, the petitioner's case. He "faintly" remembered the victim's torn shorts which the State introduced into evidence, but did not remember having objected to their introduction and did not think he had raised the issue on direct appeal.

At the request of the State, trial counsel read aloud a portion of the victim's medical report, which contained statements she made at her examination about having been raped by the petitioner vaginally, anally, and orally. Counsel agreed the medical report in all likelihood would have hurt rather than helped the petitioner's case, and the State would have tried to get the statements admitted into evidence had the nurse who conducted the physical examination been called as a witness at trial. Trial counsel said he had a faint memory of the victim's testimony about injuries she had suffered as a result of several of the rapes, including the bleeding she had experienced with respect to count six. He testified it was his belief that the victim's testimony about the petitioner's use of a sandwich bag as a condom "was the most damaging testimony that came in."

Trial counsel testified he met with the petitioner at least twice at the Lewis County Jail. He believed Ferrara might have met with the petitioner on other occasions, and that Ferrara had kept a log of telephone calls the petitioner had made to either counsel or Ferrara. In addition to other motions filed, trial counsel testified he made the normal discovery requests and that he thought his colleague had filed a motion for an *in camera* inspection of the Department of Human Services' ("DHS") file. Trial counsel said he spent more time on the petitioner's case than on most, and was satisfied he had done everything he wanted to do in preparation for the case.

David Allen Pope, the victim's former boyfriend, testified he was in North Carolina at about the time of the petitioner's trial. He said he was not aware of anyone from the public defender's office attempting to contact him about the case. The victim testified she remembered saying at trial that the petitioner ejaculated on many occasions during the sexual encounters, but did not remember her conversations with the nurse who performed her physical examination at the "Our Kids Center" in Nashville.

The State's first witness was Larry Drolsum, an attorney with the Twenty-First Judicial District Public Defender's Office, who testified he was filling in for his colleague, Elaine Beeler, when he was appointed to represent the petitioner in the General Sessions Court of Lewis County

on December 2, 1997. He spoke with the petitioner for about an hour that day, primarily about the petitioner's desire to get a bond reduction, made notes of the conversation, and turned the notes over to Ms. Beeler when he later surrendered the case to her.

Elaine Beeler testified she was currently Clerk and Master of Williamson County but, prior to holding that position, had represented the petitioner as an assistant public defender with the Twenty-First Judicial District Public Defender's Office. During the course of her representation, she worked diligently on the petitioner's case and gave him more attention than most of her other clients, speaking with him many times, both in court and at the jail. When she left the public defender's office on April 1, 1998, she not only turned over the files on all her cases, but also verbally communicated her knowledge about those cases to trial counsel and to Ferrara.

Investigator Ellery P. Ferrara testified that, at the State's request, he had compiled a list of actions taken by the public defender's office in connection with the petitioner's case.[3] Ferrara recounted the various hearings held, motions and requests for discovery filed, including Ms. Beeler's motion for *in camera* inspection of DHS files, and numerous meetings either he, trial counsel, or Ms. Beeler had with the petitioner. He also listed several telephone conversations the petitioner had with Ferrara, trial counsel, or other staff with the public defender's office from January 12 to May 28, 1999, and numerous collect calls the petitioner attempted to the office on June 23 and 24, including "thirty-some-odd calls" made during a two-hour period of time. Ferrara testified he interviewed a number of potential witnesses in the case, but his attempts to interview David Pope were unsuccessful. He said he spoke by phone with Pope's father, who told him he would try to make his son available for an interview and that he did not anticipate any problem with Ferrara serving a subpoena on his son. However, when he called the Pope residence again that same evening or the next day, Ferrara was then informed that Pope had left to spend the summer with his grandparents out of state. Ferrara testified he believed he thoroughly investigated the case:

> I felt like I adequately investigated the case, contacted any witnesses that I was aware of, gathered any information that I knew about at the time in the case. I don't think at the time, looking back, I don't believe I – you know, anything I knew about, I tried to check out. Whether or not I could end the lead with positive information or not, I believe I tried to exhaust every avenue I knew to pursue at the time.

On cross-examination, Ferrara testified he attempted to telephone David Pope several times, "probably more than four, maybe as many as six," and he did not drive to Pope's home in Perry County because he had been informed that Pope had left the state. His recollection was that he did not learn about the victim's torn shorts until the State introduced them at trial, and that he was shocked by their introduction. He said he kept trial counsel fully informed of his investigation in the case.

_____

[3]This list was admitted as an exhibit to the hearing and is included in the record before this court.

On March 11, 2002, the post-conviction court denied the petition in a written order containing extensive findings of fact and conclusions of law. The post-conviction court found that none of the petitioner's allegations of ineffective assistance was supported by the record and concluded that the petitioner received the effective assistance of counsel at trial and on appeal. Thereafter, the petitioner filed a timely appeal to this court, arguing that the post-conviction court erred in finding that he received the effective assistance of counsel and in failing to address as plain error the erroneous jury instructions given at his trial.

## ANALYSIS

### I.  Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-210(f).  When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them.  See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).  Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence.  See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997).  However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### II.  Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

On appeal, the petitioner argues that trial counsel was ineffective for: (1) failing to object to the erroneous jury instructions on aggravated sexual battery or to raise the issue on direct appeal; (2) failing to file a pretrial motion to sever the counts of the presentment; (3) failing to introduce the victim's medical report at trial and failing to call the nurse who performed the examination as a witness; and (4) failing to raise the trial court's allowance of the victim's torn shorts into evidence as an issue on direct appeal. We will address each of these allegations in turn.

## A. Failure to Object to Erroneous Jury Instructions

The petitioner first contends that trial counsel was ineffective for failing to object to the trial court's erroneous jury instructions on aggravated sexual battery. Aggravated sexual battery is defined in pertinent part as "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:"

> (1) Force or coercion is used to accomplish the act and the
> defendant is armed with a weapon or any article used or fashioned in
> a manner to lead the victim reasonably to believe it to be a weapon;
> [or]

> (2) The defendant causes bodily injury to the victim[.]

Tenn. Code Ann. § 39-13-504(a)(1)-(2) (1997). In instructing the jury on aggravated sexual battery as a lesser-included offense of aggravated rape, the trial court apparently did not include the weapon

element of subsection (1) of the definition.[4]  The petitioner argues trial counsel was deficient for failing to object to the omission of that element or to raise the issue on appeal, and counsel's deficiency prejudiced the outcome of his case because it allowed the jury to convict him based on less than the required proof.  However, we conclude from the record that the petitioner has failed to show how any alleged deficiency on the part of trial counsel for failing to object to the omitted element prejudiced the outcome of his case.

From our direct appeal opinion, as well as trial counsel's opening and closing statements to the jury, which are included in the record, it is clear that count six of the presentment, which charged the petitioner with aggravated rape and which resulted in his conviction for aggravated sexual battery, was based not on the petitioner's use of force or coercion while armed with a weapon, but rather on the bodily injury, in the form of two days of rectal bleeding, the victim sustained in the incident in which the petitioner used a plastic sandwich bag to penetrate her anus.  Thus, even assuming *arguendo* that trial counsel was deficient for failing to object to the jury instructions or to raise the issue on direct appeal, the petitioner cannot show a reasonable probability that, but for counsel's alleged deficiency, the result of his trial would have been different.  See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

### B.   Failure to File Motion to Sever Offenses

The petitioner next contends trial counsel was deficient, thereby prejudicing the outcome of his case, by failing to file a motion to sever counts one through nine of the presentment.  He argues that "[a] severance of the counts would have avoided confusion and permitted the jury to consider each allegation in isolation from the damning effect of testimony about eight other incidents."

Trial counsel testified, however, that he believed trying the offenses together helped, rather than hurt, the petitioner's case by creating confusion about the various dates and times the offenses were alleged to have occurred.  When analyzing a claim of ineffective assistance of counsel, we must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  The post-conviction court found that trial counsel and the staff of the public defender's office thoroughly investigated and prepared the petitioner's case, and concluded that the "substantial reduction," from the rapes and aggravated rapes with which the petitioner was charged to the sexual batteries and aggravated sexual battery with which he was convicted, was "due, in no small part, to the representation of [trial counsel] and his staff."  The record supports the post-conviction court's findings and conclusions regarding trial counsel's level of preparation and skill in defending the case.  Moreover, even had the petitioner shown that counsel's tactical choice not to file a motion for a severance hurt his case,

---

[4]Although the post-conviction court admitted the trial transcript and technical record as exhibits to the evidentiary hearing, they were returned to the clerk of our court upon the completion of the evidentiary hearing, and we have not found it necessary to request and review them to complete our analysis of the issues on appeal.

that fact alone would not support his claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997).

## C. Failure to Introduce Victim's Medical Report at Trial

The petitioner next contends trial counsel was ineffective for failing to introduce the victim's medical report into evidence at his trial, or to call as a witness the nurse who conducted the physical examination of the victim. The petitioner argues that the medical report was essential because it contained findings that would have tended to negate the bodily injury elements of the offenses and because it contained the victim's statements that the petitioner never ejaculated, which was contradictory to her testimony at trial.

With respect to this claim, the post-conviction court found as follows:

> The Petitioner further alleges ineffective assistance of counsel on the part of [trial counsel] in that [trial counsel] did not attempt to introduce into evidence the record of a physical examination of the victim performed by Barbara Speller-Brown, R.N., at the Our Kids Center, in Nashville. This report was entered as Exhibit 4 at the Petitioner's evidentiary hearing for post-conviction relief.
>
> Investigator Ferrara interviewed Nurse Brown. [Trial counsel] discussed this interview with his investigator and determined that the statements made by the victim to Nurse Brown would have "hurt more than helped." [Trial counsel's] legal basis for not pursuing this evidence was grounded upon his well reasoned belief that if this evidence was presented then the statements made by the victim to the treating medical personnel (Nurse Brown) would also be admissible pursuant to Rule 803(4) of the Tennessee Rules of Evidence. Under these circumstances, [trial counsel's] actions were sound trial strategy.

Again, the record supports the findings and conclusions of the post-conviction court. As trial counsel testified at the evidentiary hearing, the medical report of the victim contains her statements describing in some detail the petitioner's having raped her orally, anally, and vaginally. In addition, it also contains the very damaging information that the victim's fourteen-year-old sister reported to Department of Children's Services[5] workers that the petitioner had sexually abused her as well. The allegedly favorable information the report contains, the victim's statement that ejaculation never occurred and the medical findings that there were no tears, fissures, or lesions in the victim's anal area, is greatly outweighed by the damaging statements made by the victim and her sister. Under

---

[5]This department is also referred to as the "Department of Human Services" elsewhere in the record on appeal.

these circumstances, counsel was wise not to seek to admit the medical report into evidence or call the nurse to testify at trial.

In connection with this allegation of ineffective assistance, the petitioner also contends that the post-conviction court erred in denying his request for funds to pay for a nurse from the Our Kids Center to explain the victim's medical report at the post-conviction hearing. Specifically, the petitioner asserts that the nurse would have explained that the terms "penetrating trauma" and "healed transection" used in the victim's medical report, did not connote injuries to the victim. However, the State is not required to provide funds for an expert witness to a post-conviction petitioner in a non-capital case, see Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995), and we find no error in the post-conviction court's denial of the petitioner's request for funds to pay for this witness.

**D. Failure to Raise Admission of Victim's Torn Shorts as Issue on Direct Appeal**

Lastly, the petitioner contends trial counsel was ineffective for failing to raise as an issue on direct appeal whether the trial court erred in allowing the victim's torn shorts to be introduced into evidence. Apparently, trial counsel objected to the admission of the torn shorts at trial on the basis that the State had not provided them to him as part of pretrial discovery, but the trial court overruled the objection, finding that they had been available to trial counsel's investigator prior to trial. The petitioner now argues that trial counsel was deficient in failing to raise as an issue on direct appeal the trial court's allegedly erroneous ruling with respect to the shorts, and that trial counsel's deficiency prejudiced the outcome of his trial, in that the shorts "presumably played an important role in corroborating the testimony of [the victim]."

Trial counsel's testimony was that his practice was to discuss the case with colleagues and to carefully and thoroughly review his notes in order to identify any possible errors to raise as grounds for his motion for new trial. Implicit in counsel's testimony was that he also raised on direct appeal, after thorough review, any issues which he deemed had merit. Thus, the petitioner has not shown, with respect to this claim, that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citations omitted). Nor has the petitioner shown that the result of his trial would have been different had trial counsel raised the issue of the shorts on direct appeal. In summary, we conclude that the petitioner has failed to meet his burden of demonstrating he was denied the effective assistance of counsel, either at trial or on appeal.

**III. Post-Conviction Court's Failure to Address Plain Error**

The petitioner also argues that the post-conviction court erred in failing to address as plain error the trial court's erroneous jury instructions on aggravated sexual battery. The plain error doctrine, however, is not applicable in a post-conviction proceeding. See State v. West, 19 S.W.3d 753, 756 (Tenn. 2000). The petitioner did not raise the trial court's jury instructions as an issue in

either his motion for a new trial or in his direct appeal.  Consequently, he has waived the issue and cannot now raise it for the first time in a petition for post-conviction relief.

## **CONCLUSION**

We conclude that the petitioner has failed to meet his burden of demonstrating he was denied the effective assistance of counsel at trial or on appeal.  We further conclude that the post-conviction court did not err in denying the petitioner's request for funds for a post-conviction witness, or in refusing to address as plain error the trial court's jury instructions on aggravated sexual battery. Accordingly, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE